IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT SANCHEZ and
FRANK MONTOYA,

        Plaintiffs,

vs.                                    No. CIV 03-999 JC/WDS

HOME DEPOT, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed June 7, 2004 (*Doc. 27*). Having considered the Motion, the parties' submissions, the relevant authority, and being otherwise fully advised in the premises, the Court finds the Motion well-taken and it is, therefore, granted.

**I.    Background**

Plaintiffs Frank Montoya ("Montoya") and Robert Sanchez ("Sanchez") were employed as freight team associates on the night crew at one of Home Depot's Albuquerque, New Mexico stores. Plaintiffs are both of Hispanic ethnicity. Sanchez was hired on May 27, 1997 and Montoya was hired on April 11, 2002. A freight team consists of approximately five associates who are responsible for various stocking duties.

On January 31, 2003, Clare Low, another freight team associate, reported to Pat Kinney, Assistant Store Manager, that Plaintiffs had committed a safety violation during their shift on January 27, 2003. Specifically, Low stated that while the team was stocking a pallet of windows, some of

which the team had decided to place in an overhead storage area for lack of space in the designated ground area, Sanchez jumped on the forks of a Reach (a lifting device similar to a forklift) and asked Montoya to lift him up. Montoya then used the Reach to raise Sanchez six feet off the ground to the overhead storage area and handed Sanchez the windows. Once Sanchez had hand-stacked the windows, Sanchez stepped back onto the Reach and Montoya lowered him to the ground.

Home Depot's Critical Operating Safety Standards state, "Do NOT raise an associate on a pallet on the forks, or on the forks of lift equipment." Defendant's Statement of Facts, Ex. A, Ex. 4 thereto. Additionally, Home Depot's Rules of Conduct provide that "recklessly endangering oneself, other people, or property" is an immediately terminable offense. *Id.*, Ex. A, Ex. 3 thereto. Finally, Home Depot's Safety Disciplinary Policy provides that "conduct by associates that recklessly endangers themselves, other people or property may result in discipline, up to and including immediate termination without prior counseling." *Id.*, Ex. A, Ex. 4 thereto. Both Plaintiffs acknowledge receipt of these Home Depot policies and rules and have attended numerous safety training courses pertaining to such policies and rules. Montoya Depo. at 22:5-32:8; Sanchez Depo. at 40:3-48:4.

On February 3 and 4, 2003, Theresa Butler, the store's Human Resources Manager, investigated the incident reported by Low. Butler, together with Manager Jamie Moran, interviewed Plaintiffs, Low, and Diane Vega, another member of the team on duty the night of the incident. Based on her investigation, Butler concluded that Plaintiffs had engaged in serious violations of Home Depot's safety policies and she discussed her conclusion with Regional Safety Manager, Scott Crosier as well as District Human Resources Manager, Amy Carver. Crosier and Carver informed Butler that the serious nature of the violations warranted termination of Plaintiffs. The terminations were also

approved by District Manager, Hector Castro, who is Hispanic. On February 4, 2003, Home Depot terminated Plaintiffs' employment.

On July 24, 2003, Plaintiffs filed their Complaint in the Second Judicial District Court, County of Bernalillo, State of New Mexico, alleging employment discrimination based on national origin pursuant to the New Mexico Human Rights Act, N.M. Stat. Ann. 1978 §§ 28-1-1, *et seq.,* and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.,* (Count I) and Breach of Implied Contract (Count II). On August 3, 2003, Defendant filed its Notice of Removal in this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

## II.  Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts

showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

**III.    Discussion**

*A.    Discrimination in Employment*

Title VII of the Civil Rights Act makes it an unlawful employment practice "for an employer ...to discriminate against any individual...because of such individual's race, color, religion, sex, or national origin." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003) (quoting 42 U.S.C. § 2000e-2(a)(1)). Recognizing that evidence of discrimination in most contexts will be indirect or circumstantial, the Tenth Circuit employs the three-stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981) where, as here, no direct evidence of discrimination exists. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988). This burden-shifting approach is calculated to afford plaintiffs a fair and reasonable means by which to prove their case. *Id.* In order to establish a prima facie case of racial discrimination in the form of disparate treatment under this framework, Plaintiffs must first show (1) that they are members of a racial minority, (2) that they suffered an adverse employment action, and (3) that similarly situated employees were treated differently. *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). If Plaintiffs satisfy all three of the prima facie requirements, the analysis moves to the second stage

where the burden shifts to Defendant to present a legitimate, nondiscriminatory reason for its action. *Id.* Finally, if Defendant sufficiently discharges its burden, the third stage of the analysis requires Plaintiffs to show that race or national origin was the determining factor in Defendant's decision to terminate them such that Defendant's proffered justification is mere pretext for unlawful discrimination. *Id.* Plaintiffs' failure to discredit Defendant's "legitimate" reason for termination with evidence of pretext will entitle Defendant to judgment as a matter of law. *Id. See also, Denison v. Swaco* 941 F.2d 1416, 1421.[1]

It goes uncontested that Plaintiffs have met the first and second elements of a prima facie case for discrimination, for they are both Hispanic and were terminated from Defendant's employ. It is on the third element that Plaintiffs fall short. Plaintiffs contend that they were treated unequally because other non-minority members of the freight team on the night of the incident were not terminated for the separate infraction of failing to put up banner barricades during the incident. This argument must fail, however, for Plaintiffs, while equally guilty of failing to put up barricades, were not terminated for that offense either. Stated differently, Plaintiffs argue that because the other members of the team, who are not Hispanic, did not lose their jobs for failing to put up safety banners while the team was stocking windows, the non-Hispanic team members were given preferential treatment. This argument is inapposite, for Plaintiffs were terminated for the forklift safety violation and not the failure to use banners. Indeed, all team members were treated identically regarding the banner violation --no freight team member, Hispanic or non-Hispanic,was disciplined in any way for failing to petition off the work area with safety banners while the store was closed. What is relevant

---

[1]The New Mexico Supreme Court has adopted the same evidentiary methodology used by the federal courts in analyzing claims of unlawful discrimination. *Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 35 (2001).

to the Court's inquiry is that no non-Hispanic team member violated the forklift regulation, the offense for which Plaintiffs were terminated. Moreover, the unchallenged evidence before the Court indicates that Defendant indeed treated Plaintiffs in the same way they have treated non-minority employees guilty of similar or identical safety violations involving a lifting device in the past. Specifically, a White assistant store manager at Defendant's store in Olathe, Kansas was terminated for standing on a forklift two feet off the ground while hanging signs; two White employees at Defendant's store in Topeka, Kansas were terminated after one of them raised and lowered the other using a forklift; two other White employees at Defendant's store in St. Charles, Missouri were terminated after one of them raised the other using a forklift, and a White employee at another store in New Mexico was terminated after he was seen standing on the pallet of a forklift. Motion at 6. Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have simply not met their burden to show that similarly situated non-protected employees were treated differently.

Even if the Court determined that Plaintiffs could establish a prima facie case for discrimination, Plaintiffs offer no competent summary judgment evidence to support their assertion that Defendant's stated reason for termination is pretexual or unworthy of belief. Defendant asserts that its true and legitimate reason for terminating Plaintiffs was Plaintiffs' own reckless behavior in violation of Defendant's well-established safety regulations. *See Critical Operating Safety Standards, Lift Equipment Safety Standards, Fall Protection and Safe Ladder Use*. Def's Stmt. Mat. Facts, Ex. A, Ex. 4 thereto. Indeed, Defendant expressly reserves to itself the right to determine if a safety violation is of such a serious nature that it will be terminable without warning. Defendant's *Safety Disciplinary Policy*, a copy of which was signed by Plaintiffs, unequivocally states "conduct

by associates that recklessly endangers themselves, other people or property may result in discipline, up to and including immediate termination without prior counseling."[2] Def's Stmt. Mat. Facts, Ex. A, Ex. 5 thereto.

Plaintiffs do not offer any evidence upon which the Court might conclude that Defendant's proffered reason is pretext for intentional discrimination. To the contrary, Plaintiff Sanchez stated at deposition "I have no idea" when asked why he thought that he and Plaintiff Montoya had been singled out. Sanchez Depo. at 11:6-7. Plaintiff Montoya testified at deposition that his sole basis for the discrimination charge is his own belief that an unidentifiable person "higher up" than anyone at the store where he worked, and located somewhere in corporate headquarters, had singled him out. Sanchez Depo. at 10:20-12:10. Plaintiffs' subjective belief that they were singled out for being Hispanic alone is insufficient to meet their burden of proof. As Defendant has aptly stated, "[t]he fact that Plaintiffs are Hispanic does not allow them to disregard the company's safety policies." Mot. at 6. As the Supreme Court has recognized, employment discrimination laws were not intended to "diminish traditional management prerogatives." *United Steel Workers of America, AFL-CIO-CLC v. Weber*, 443 U.S. 193, 207 (1979).

In summary, the Court finds that Plaintiffs have failed to offer evidence supporting disparate treatment as a necessary element of a prima facie case for racial discrimination under Title VII and the New Mexico Human Rights Act. The Court further finds that even if Plaintiffs could establish this necessary third element, they have wholly failed to offer any competent summary judgment

---

[2] Notably, Plaintiff Sanchez was previously issued a written warning for a safety violation on October 10, 2001, which states "Robert Sanchez will follow all safety standards and any violation of these standards will result in termination." *Associate Performance Notice*, Def's Stmt. Mat. Facts, Ex. B, Ex. 14 thereto.

7

evidence from which a reasonable fact-finder could determine that Defendant's proffered reason for termination is mere pretext for intentional discrimination. For these reasons, Plaintiffs claims of national origin discrimination must fail under both Title VII and the New Mexico Human Rights Act.

### B.     *Implied Contract*

Plaintiffs further contend that their employment termination breached an implied contract Defendant had entered into with them. For the reasons discussed briefly below, this claim is without merit.

New Mexico courts recognize two exceptions to the general at-will employment rule: (i) wrongful termination under facts disclosing unlawful retaliatory discharge or (ii) where the facts disclose the existence of an implied employment contract provision that limits the employers authority to discharge. *Lopez v. Kline*, 124 N. M. 539, 541 (Ct. App. 1997). Under New Mexico law, "an employer creates an implied contract of employment where its words and actions create a reasonable expectation of termination only for cause." *Roderiquez v. America Online, Inc.*, 183 F. Supp.2d 1340, 1356 (D.N.M. 2001) (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668 (1993)). "An implied contract will not be found where the alleged promise by the employer [is] not sufficiently explicit." *Garrity v. Overland Sheepskin Co.*, 121 N. M. 710, 710 (1996) (internal quotation marks and citation omitted). More particularly, the employers promise must be "sufficiently explicit to give rise to a reasonable expectation that the employer restricted its absolute ability to discharge employees at will." *Kiedrowski v. Citizens Bank*, 119 N. M. 572, 575 (Ct. App. 1995). Moreover, where a written personnel policy expressly reserves the right to terminate employment without notice for any reason, the personnel policy does not give rise to an implied employment contract. *Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 714 (1996).

In this case, Plaintiffs have provided no evidence from which a reasonable jury could find the existence of an implied employment contract. It is Plaintiff's erroneous contention that the express written disclaimer in Defendant's Orientation Handbook ("Handbook") was superseded by Defendant's Safety Disciplinary Policy ("Disciplinary Policy"). Plaintiffs then assert that the Disciplinary Policy created an implied contract by its language, referencing a progressive disciplinary policy for some offenses, and that such contract was breached when Plaintiffs were terminated and not merely warned for their violation. The Court disagrees.

Curiously, when asserting their theory, Plaintiffs rely on the case of *K & V Scientific Co. v. B.M.W.,* 164 F. Supp. 2d 1260 (D.N.M.) (*reversed by* 314 F.3d 494 (10th Cir. 2002)). The Court has scrutinized that case only to find it utterly inapplicable to the facts of this case. In *K & V*, the court was faced with two signed confidentiality agreements, identical in language save a forum selection clause in the second that had not been included in the first, and applied well-established contract law to find that the terms of the more recent contract would prevail to the extent that the documents were inconsistent. The doctrine of merger applied in *K & V* brings nothing to bear on the facts of this case, for the parties here had no contract.

The documents relied upon by Plaintiffs as creating an implied contract do not alter their at-will employee status. Defendant's written personnel policy expressly reserves the right to terminate Plaintiff's employment without notice for any reason. Specifically, the policy states:

> **Employment at will policy**
>
> As an associate of Home Depot, your employment is for no specific period of time, and you have the right to terminate your employment at any time, at your convenience, with or without cause or reason. Home Depot has the same right. This status can only be modified if the modification is stated in writing in a document

9

>           that is signed by both you and the CEO or a Division President of
>           the Company.

Additionally, Defendant's "Associate Acknowledgment," received by both Plaintiffs, states in pertinent part:

>           ...
>           Neither the Guide nor any provisions [sic] of the handbook
>           is an employment contract or any type of contract.
>           ...

In sum, the Court finds nothing in the record to alter the above disclaimers or the at-will employment doctrine. Therefore, Plaintiffs were at-will employees, had no reasonable expectation that they could be terminated only for cause, and have no cause of action sounding in contract.

## IV.   Conclusion

The Court finds that Plaintiffs have failed to offer sufficient summary judgment evidence to establish a prima facie case for national origin discrimination insofar as they lack evidence of disparate treatment. Further, even if the Court found sufficient evidence to support a prima facie case, Plaintiffs have wholly failed to offer evidence that could support a finding that Defendant's justification for terminating Plaintiffs' employment is mere pretext for intentional discrimination. Therefore, there remains no genuine issue of material fact in need of resolution on Plaintiffs' claims for discrimination under Title VII or the New Mexico Human Rights Act. Further, Plaintiffs have failed to offer evidence of a genuine dispute of material fact on their claim sounding in contract, for the evidence can only support a finding that Plaintiffs were at-will employees.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed June 7, 2004 (*Doc. 27*) is GRANTED and Plaintiffs' claims against Defendant are DISMISSED with prejudice.

DATED August 17, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:

>Thomas Chism, Esq.
>Albuquerque, New Mexico

Attorneys for Defendant:

>Rebecca Winterscheidt, Esq.
>Matthew D. Mitchell, Esq.
>Phoenix, Arizona
>
>Stanley K. Kotovsky, Jr., Esq.
>The Tinnin Law Firm
>Albuquerque, New Mexico